**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

TEARRA Z. BROWN,
    *Plaintiff*,

    v.

ROBERT F. KENNEDY, JR.,
Secretary, Department of Health and
Human Services, *et al.*,

    *Defendant*

Case No. 23-cv-3442-ABA

**MEMORANDUM OPINION**

Plaintiff Tearra Brown, who is proceeding *pro se*, has sued Defendants Robert F. Kennedy as the Secretary of the Department of Health and Human Services and Plaintiff's co-workers Jeen Su Min, Donal Parks, Teresa Ramson, Eunice Chung-Davies, and Lisa Berry. Ms. Brown alleges that the Defendants have discriminated against her on the basis of race, color and disability, and retaliated against her in a wide variety of ways over a decade. Plaintiff also alleges violations of the Privacy Act of 1974. Defendants filed a motion to dismiss or in the alternative for summary judgment. For the reasons provided below, the Court will construe the motion as it relates to allegations on or before March 17, 2022 (*i.e.*, allegations that were part of the underlying EEOC proceedings) as one for summary judgment and as a motion to dismiss for all allegations related to events occurring after March 17, 2022. Summary judgment for Defendants will be granted with respect to events occurring on or before March 17, 2022, and the Court will dismiss without prejudice the allegations occurring after March 17, 2022.

## I.   Standards of Review

A court may convert a motion to dismiss into a motion for summary judgment when the parties request that the court consider materials outside of the pleadings. Fed. R. Civ. P. 12(d); *Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997). Prior to such conversion, all parties must "be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment," which can be satisfied when a party is "aware that material outside the pleadings is before the court." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). A "motion's alternative caption and attached materials are in themselves sufficient indicia." *Dabas v. Brennan*, Case No. 17-cv-392-CCB, 2018 WL 1300965, at *4 (D. Md. Mar. 13, 2018) (citing *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998)). The parties must also "be afforded a reasonable opportunity for discovery." *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013). In some circumstances, a complete administrative record may indicate that sufficient discovery has been taken. *See Dabas*, 2018 WL 1300965, at *4 (concluding that, where the plaintiffs "had adequate notice that the defendant's motion might be treated as one for summary judgment" and "[t]he administrative record in th[e] case was voluminous," the court would "treat the motion of the defendant as a motion for summary judgment").

Here, both parties attach materials outside of the complaint to their filings and rely on and cite heavily to the over 1,500-page administrative record that concerns Plaintiff's charges of discrimination that she last amended on March 17, 2022. *See.* ECF Nos. 27-2 through -6 & 31-1; *see also* ECF No. 27-5 at 60.[1] In her response, Ms. Brown

---

[1] For consistency, the Court will cite to the ECF document and page numbers rather than the pagination used by the parties or the pagination used in the administrative record.

acknowledges that the motion was filed as one to dismiss or for summary judgment, ECF No. 31 at 1, cites the summary judgment standard, *id.* at 3–4, discusses the allegedly material facts she believes are in dispute, *id.* at 4–7, and refers to the *McDonnell Douglas* framework, which is used at the summary judgment stage, *id.* at 8–14. The parties have had ample notice that the Court might consider Defendant's motion as one for summary judgment and there has been ample opportunity for discovery regarding the allegations occurring on or before March 17, 2022. Thus, the Court will treat the motion as one for summary judgment regarding the allegations considered by the ALJ and that were developed in the underlying administrative proceeding and are contained in the administrative record.

In contrast, Defendants have not addressed the allegations in the amended complaint that allegedly occurred after March 17, 2022. It is not clear whether those claims have been exhausted or what, if any, factual development has occurred in connection with those allegations. Therefore, the Court will treat the motion regarding those allegations as a motion to dismiss.

### A.     Summary Judgment

Under Federal Rule of Civil Procedure 56, a party may move for summary judgment on a "claim or defense—or the part of [any] claim or defense"—by showing that "there is no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if proof of its existence "might affect the outcome of the suit," and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[C]ourts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing

the evidence or making credibility determinations." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021) (quoting *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If a moving party carries this burden, then the Court will award summary judgment unless the non-moving party identifies specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [opposing party's] position," however, is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252.

B.      **Dismissal under Federal Rule of Civil Procedure 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and state a facially plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering such a motion, the Court must "accept as true all of the factual allegations contained in the complaint

and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

## II.    Factual and Procedural Background

Ms. Brown's amended complaint is confusing and disjointed. The 75-page document contains multiple and sometime repetitive fact sections in non-chronological order and no clear individual counts setting forth her specific legal claims for relief. Adding to the confusion, Ms. Brown refers to herself alternatively in the first, second, and third person. The ALJ in the underlying EEOC proceeding, however, filed a detailed account of Ms. Brown's complaints through March 17, 2022 that were part of her two EEO charges, which is very helpful in ascertaining Ms. Brown's claims. ECF No. 27-6.

Ms. Brown is African-American. ECF No. 27-6 at 9. She was diagnosed with post-traumatic stress disorder ("PTSD") but she does not consider herself disabled. *Id.*; ECF No. 27-3 at 25. In February 2015, Ms. Brown was hired by the Food and Drug Administration to work in the Center for Drug Evaluation and Research. ECF No. 27-6 at 9. Ms. Brown's direct supervisor is Defendant Jeen Min, who is Asian-American. *Id.* From 2015 through February 2020, Ms. Brown's second-line supervisor was Defendant Donal Parks, who is white. *Id.* Mr. Parks was thereafter replaced by Defendant Lisa Berry, who is also white. *Id.* Regarding the remaining individual Defendants, Ms. Brown alleges that Teresa Ramson, who is Asian-American, was elevated from a subordinate to an acting director after 2017, ECF No. 24 at 6, ECF No. 27-5 at 21, and that Eunice Chung-Davies, who is Asian-American, was a program manager, ECF No. 24 at 14, ECF No. 27-6 at 4.

Ms. Brown does not clearly state what claims she is asserting in the amended complaint, but it can be fairly read to allege that she was discriminated against on the

basis of race and color in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§§ 2000e, *et seq.* ("Title VII"), retaliated against in violation of Title VII, subjected to a

hostile work environment in violation of Title VII, denied accommodations for her PTSD

in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*

("ADA"), and subjected to invasions of privacy in violation of the Privacy Act of 1974, 5

U.S.C. § 552a. Because Ms. Brown is a federal employee, the Court will analyze her

disability accommodation claim under section 504 of the Rehabilitation Act of 1973, 29

U.S.C. § 794, rather than the ADA. *Brown v. Henderson*, 6 F. App'x 155, 156 (4th Cir.

2001); 42 U.S.C. § 12111(5)(B) (providing that the United States is not an "employer"

under the ADA).

As stated, the majority of Ms. Brown's allegations were considered in the ALJ's

July 6, 2023 order in which he concluded that there were no genuine disputes of

material fact, Ms. Brown did not establish a prima facie case of race, color, or disability

discrimination, retaliation, or a hostile work environment, she did not show that

Defendants' legitimate actions were pretext for discrimination or retaliation, and she did

not show any privacy violations. ECF No. 27-6 at 23–28.

In the two EEOC discrimination charges considered by the ALJ, Ms. Brown

alleged that she was discriminated against on the basis of race and color, retaliated

against, subjected to harassment, and denied disability accommodations on the

following occasions (as described in the ALJ's decision and the acceptance letters and

investigation reports for Ms. Brown's two EEO charges, *see* ECF No. 27-2 at 2–4; ECF

No. 27-3 at 5–6, 14, 18; ECF No. 27-5 at 4–6, 60–62; ECF No. 27-6, at 2–4):

1.       In January 2017, Ms. Brown's promotion was allegedly denied with no

justification or prior warning.

6

2.     On January 24, 2017, Ms. Brown was allegedly rated a zero by Ms. Ramson on her 2016 Performance Management Appraisal Program ("PMAP") for alleged performance concerns.

3.     On February 7, 2017, Mr. Parks allegedly informed Ms. Brown that Mr. Min could alter documents with Ms. Brown's signature without her consent or knowledge.

4.     On February 23, 2017, Mr. Min allegedly retroactively created an entry for a meeting in October 2016 that did not actually occur and threatened Ms. Brown to say that she participated in the meeting.

5.     On February 23, 2017, Mr. Min issued Ms. Brown a letter of counseling allegedly containing false allegations to prevent her from reporting Mr. Min's behavior to management.

6.     As recently as June 2019, Ms. Brown was allegedly threatened to "leave the fabricated October 2016 meeting alone" or she would receive disciplinary actions, and that management failed to respond to her complaints that she was forced to say that she participated in the meeting.

7.     On June 19, 2019, Mr. Min allegedly made inappropriate statements to Ms. Brown including implying that she was crazy and threatened to take disciplinary action or terminate her employment if she ever reported him again.

8.     On June 21, 2019, Mr. Min sent Ms. Brown an email advising her to request reasonable accommodations because he was concerned about her medical condition, which Ms. Brown contends insinuated that he thought that Ms. Brown was crazy.

9.     As recently as December 13, 2019, Mr. Parks sent Ms. Brown emails that she contends were hostile, condescending, and harassing.

10. In May 2020, Ms. Brown's duties were allegedly removed or reduced to deny her an opportunity to advance, which she contends singled her out and defamed her.

11. In May 2020, Ms. Berry allegedly dismissed Ms. Brown's claim of harassment, and told Ms. Brown numerous times to comply with Mr. Min's meetings or face disciplinary action; Ms. Brown contends that Ms. Berry neglected to investigate her claim with anyone other than Mr. Min.

12. On May 28, 2020, Mr. Min issued Ms. Brown a letter of reprimand, which Ms. Brown contends contained false allegations.

13. On June 12, 2020, Ms. Brown was allegedly denied a secondary reviewer position that was instead given to Ms. Ramson, who Ms. Brown contends was insufficiently experienced, and Mr. Min allegedly refused to allow African Americans to perform secondary reviews.

14. On November 20, 2020, Ms. Brown alleged that Mr. Min and Ms. Chung-Davies had a history of editing Ms. Brown's work to make it look incorrect.

15. As of November 2021, Mr. Min allegedly asked Ms. Brown to complete complex billing duties to help other staff members; Ms. Brown contends that other staff members have been promoted over Ms. Brown despite her experience and completion of the complex work.

16. On July 2, 2021, Ms. Brown reported claims of discrimination, bullying and harassment to Mr. Min in her Mid-Year Accomplishment Report, including that Mr. Min allowed other employees with less experience to surpass Ms. Brown and that each year a new Asian-American employee was selected to surpass Ms. Brown, despite the fact that Ms. Brown had more experience and had been asked to do more complex work and train others on the team.

17.     On July 14, 2021, Ms. Chung-Davies allegedly made Ms. Brown reply to questions at a meeting because Ms. Brown disagreed with certain problematic procedures, but Ms. Brown's advice was doubted by the team, and Ms. Brown disagreed with the procedures described at the meeting because they involved repeating steps that she contended made the agency look incompetent.

18.     Ms. Brown contends that on July 19, 2021, she was verbally attacked by Ms. Chung-Davies for reporting that certain products (specifically Biological Products Applications ("BLAs")) were not properly visible in the Prescription Drug User Fee Act database.

19.     On March 16, 2022, Eric Stone, Director of Office of Management, responded to Ms. Brown's reasonable accommodation request to stop Mr. Min from using the February 2017 letter of counsel against her.

20.     Mr. Min allegedly excluded Ms. Brown from participating in any meetings related to orphan waiver cases.[2]

In connection with her Privacy Act claim, Ms. Brown appears to allege that Mr. Min shared information about her disabled child "in an offensive" and "harmful manner" with other co-workers in 2015, ECF No. 24 at 11, ECF No. 24-1 at 1, and that in June 2019, Mr. Min shared private medical information in an email to Ms. Brown on which Mr. Parks was copied, ECF No. 24 at 12; ECF No. 27-4 at 89–90; ECF No. 27-6 at 27.

---

[2] The parties do not explain the nature of these cases, but they presumably relate to requests from drug manufacturers to waive FDA application fees under the Orphan Drug Act for drugs that treat rare diseases. *See, e.g.*, https://www.fda.gov/industry/medical-products-rare-diseases-and-conditions/designating-orphan-product-drugs-and-biological-products.

Ms. Brown also includes allegations in her amended complaint related to events that occurred after the allegations discussed in the ALJ's decision. As stated, it is unclear whether Ms. Brown exhausted these claims or whether they are reasonably related to the charges that were before the ALJ, and Defendants do not address them in their motion. These allegations include that:

1.      Ms. Berry called Ms. Brown a liar in June 2022. ECF No. 24-1 at 26.

2.      Ms. Brown voiced concerns in August 2022 that she was not permitted to perform her duties. *Id.* at 34.

3.      Ms. Brown was told by Ms. Chung-Davies and Mr. Min in September 2022 that she was required to perform her Asian-American coworkers' jobs. ECF No. 24 at 15, ECF No. 24-1 at 32.

4.      In February 2023 Mr. Min continued to imply Ms. Brown was crazy. ECF No. 24-1 at 42.

5.      In September 2024 Asian-American co-workers were told they did not have to share Ms. Brown's duties. ECF No. 24 at 15.

6.      In January 2024 Ms. Brown was suspended for three days for asking for help and she was not considered for a promotion because of the suspension. *Id.* at 14–15.

7.      That "[t]he same issues reported in February of 2017 are still occurring in July of 2025 due to [Ms. Brown's] protected activity" and that she is "not respected as a person," is "expected to work twice as hard," must "train others with less experience who are promoted past" her because of her "activities with the courts for defending [her] rights in this case." *Id.* at 15.

Ms. Brown filed this case on December 20, 2023, but did not serve Defendants until approximately a year later. ECF Nos. 1, 14, 15. After Defendants filed a motion to

10

dismiss, Ms. Brown filed an amended complaint with leave of court on July 11, 2025. ECF No. 24. Defendants again moved to dismiss the amended complaint or, in the alternative, for summary judgment, to which Ms. Brown responded. ECF Nos. 27 & 31.

## III.   Discussion

Ms. Brown appears to allege that she was discriminated against on the basis of race and color in violation of Title VII, retaliated against in violation of Title VII, subjected to a hostile work environment in violation of Title VII, denied disability accommodations in violation of the Rehabilitation Act, and subjected to invasions of privacy in violation of the Privacy Act.

### A.   Title VII

Title VII prohibits discrimination against "any individual with respect to [her] compensation, terms, conditions, or privileges of employment" because of, among other things, race or color, or in retaliation for engaging in a protected activity. 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a). When plaintiffs rely on circumstantial evidence to prove Title VII claims, they generally rely on the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as is the case here.

Under this framework, a plaintiff must first make out a prima face case of discrimination or retaliation. *McDonnell Douglas*, 411 U.S. at 802. The Court will address the specific prima facie elements for each claim in the following subsections. Once a plaintiff makes a prima facie showing, the burden of production shifts to the defendant to offer evidence of a legitimate, non-discriminatory/non-retaliatory reason for the relevant employment decisions. *Id.*; *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852 (4th Cir. 2001). A legitimate reason is not necessarily a wise reason, but rather any reason that does not discriminate. *See DeJarnette v. Corning, Inc.*, 133 F.3d 293,

299 (4th Cir. 1998) ("[I]t is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.") (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997)).

If the defendant offers such a reason, the burden then shifts back to the plaintiff to show the defendant's proffered reason is mere pretext for discrimination or retaliation. *McDonnell Douglas*, 411 U.S. at 804; *Sears Roebuck*, 243 F.3d at 852. For a Title VII discrimination claim, a plaintiff can establish pretext by "showing that the employer's proffered explanation is unworthy of credence," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 646 (4th Cir. 2002) (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981)), and that, ultimately, discrimination "was a motivating factor" in the adverse employment action, 42 U.S.C.A. § 2000e-2(m). But, to demonstrate pretext in a Title VII *retaliation* claim, the plaintiff must go beyond that standard and demonstrate that the plaintiff's protected activity was the "but-for" cause of the adverse employment action. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e–2(m).").

### 1.    Disparate Treatment Discrimination

To prove a prima facie case of disparate treatment discrimination based on race or color under Title VII, a plaintiff must prove: (1) membership in a protected class, (2) satisfactory job performance, (3) an adverse employment action, and (4) that similarly situated employees outside the protected class received more favorable treatment.

*Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd,* 566 U.S. 30 (2012).

In general, Ms. Brown's discrimination claims are deficient because she has not proven that the allegedly adverse actions she identified occurred at least in part because of her race or color. 42 U.S.C. §§ 2000e-2(a)(1). Ms. Brown recites a host of alleged wrongs, but besides conclusory statements, she does not produce evidence that they were connected to her race or color. And in some instances, Ms. Brown specifically provides other non-protected reasons for the alleged discrimination such as that Ms. Ramson gave her a zero score on her 2016 PMAP "for personal financial gain" and to benefit Ms. Ramson's husband who also worked in the office. *See* ECF No. 24 at 6–7. To be actionable, the incidents Ms. Brown complains about must not just be unfair, unjust, or unpleasant, but must have been performed because of her race or color. And her subjective belief that that is the case, or conclusory statements to that effect, are not sufficient to meet her burden. *See Goldberg v. Green*, 836 F.2d 845, 848 (4th Cir. 1998) (holding that a plaintiff's "naked opinion, without more, is not enough" to prove her Title VII claims).

But, even if Ms. Brown could establish a prima facie case of race or color discrimination, she has not come forward with evidence from which a reasonable jury could conclude that Defendants' various reasons for the relevant employment actions were pretextual and untrue. *Sears Roebuck*, 243 F.3d at 852.

For example, Ms. Brown alleges that she was denied a promotion in January 2017, but she was not eligible for a promotion at that time. ECF No. 27-4 at 138. Plus, she was given a promotion in February 2017. ECF No. 27-3 at 50–51; ECF No. 27-4 at 138–39; ECF No. 27-6 at 10–11, 23.

Ms. Brown alleges that Mr. Min issued a letter of counselling to her on February 23, 2017, falsely alleging that she had been unprofessional and that he also made similar false claims in a May 28, 2020 letter of reprimand. But as the ALJ found, the allegations were supported by Ms. Brown's own emails showing she had acted in an unprofessional manner. ECF No. 27-4 at 239–240, 245–49, 113; ECF No. 27-6 at 13, 17, 24.

Ms. Brown alleges that she was repeatedly denied promotions, but as the ALJ also concluded, her allegations are based on her own subjective assessments, which are insufficient to show pretext. ECF No. 27-6 at 24; *see Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 271 (4th Cir. 2005) (holding that an employee "cannot establish pretext by relying on criteria of her own choosing when the employer based its decision on other grounds"); *see also DeJarnette*, 133 F.3d at 299 (holding that in determining if a plaintiff's performance was adequate, "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff") (cleaned up). And as Mr. Min and Mr. Parks explained, Ms. Brown did receive promotions in 2016, 2017, and 2018, eventually being promoted to GS-13, the highest position available to her. ECF No. 27-4 at 138–39; ECF No. 27-5 at 361; ECF No. 27-6 at 21, 24.

Ms. Brown claims that in February 2017, Mr. Min retroactively created an entry for a meeting in October 2016 that did not actually occur and threatened her to confirm that she had participated in the meeting. But, as found by the ALJ, she does not present any evidence of this allegation other than her own statements. ECF No. 27-6 at 12–13, 26. Mr. Parks stated that the alleged "fake" meeting was not on any of their calendars. ECF No. 27-4 at 127–28.

Ms. Brown alleges that Mr. Min altered documents with her signature without her consent. Mr. Min did revise sections of a 2017 PMAP but the revisions applied to all

employees, so the alterations could not have been based on discrimination or retaliation against Ms. Brown. ECF No. 27-4 at 79, 92; ECF No. 27-6 at 11–12, 26. Ms. Brown's managers explained why the revision was required by the agency. ECF No. 27-4 at 91–92.

Ms. Brown alleges that on June 19, 2019, Mr. Min made inappropriate statements, including implying that she was crazy, which Mr. Min denies. ECF No. 27-4 at 71. But that comment is unrelated to her race or color and, while such an isolated remark might show rudeness, it does not show disability discrimination or retaliation. Moreover, the follow-up email Ms. Brown contends is also discriminatory and implies that Ms. Brown is crazy shows that Mr. Min offered her reasonable accommodation resources, referred generally to a medical condition and concern for Ms. Brown's wellbeing, and did not insinuate that she was crazy. ECF No. 27-4 at 89–90; ECF No. 27-6 at 15, 27. Ms. Brown further contends that Mr. Min violated her privacy because this email was copied to Mr. Parks, but the email does not disclose any sensitive details regarding Ms. Brown's medical conditions. ECF No. 27-4 at 89–90.

Ms. Brown alleges that Mr. Parks threatened her in a December 13, 2019 email and Mr. Min harassed her in a July 2, 2021 email, but Mr. Parks's 2019 email merely requested access to Ms. Brown's calendar and Mr. Min responded in a professional manner in the July 2021 email. ECF No. 27-3 at 142; ECF No. 27-5 at 293; ECF No. 27-6 at 15, 24–25. Ms. Brown alleges that Mr. Min did not respond to her claims of discrimination, bullying, and harassment, but in the same July 2021 email Mr. Min explained that he could not respond because the claims were related to the then-current EEO action. ECF No. 27-5 at 293; ECF No. 27-6 at 26.

15

Ms. Brown contends that Mr. Min excluded her from meetings about orphan waiver cases, but Mr. Min explained that in 2017 Ms. Brown was transferred to the Fees Team, which did not deal with orphan waiver cases and Ms. Brown no longer handled those cases. ECF No. 27-6 at 11, 25.

Ms. Brown alleges that she was denied a secondary reviewer position in 2020 and that the position was instead given to Ms. Ramson. The secondary reviewer position is not a set position but an assignment. ECF No. 27-5 at 370, ECF No. 27-6 at 25. Moreover, Ms. Brown did not start performing secondary reviews until May 2021 and, at the time, Ms. Ramson had six years' experience performing them. ECF No. 27-5 at 403; ECF No. 27-6 at 18, 25. As found by the ALJ, employers have broad discretion to set policies and make personnel decisions that should not be second-guessed by a court absent evidence of unlawful motivation. ECF No. 27-6 at 25 (citing *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 259 (1981)).

Ms. Brown alleges that Ms. Berry and Mr. Min discriminated against her by failing to investigate her claim that Ms. Chung-Davies was inappropriate towards her at a May 2020 meeting. But the evidence shows that they did investigate the claim, and a management inquiry was initiated and a contract investigator determined that the allegations were not substantiated. ECF No. 27-4 at 109–10; ECF No. 27-5 at 450–51; ECF No. 27-6 at 16–17, 26.

Ms. Brown alleges that Mr. Min and Ms. Chung-Davis edited her work to make it appear incorrect—specifically that Ms. Chung-Davies changed a link in an email to be incorrect. ECF No. 27-5 at 138–39. Ms. Chung-Davis denies this happened, but as with many of her allegations, Ms. Brown also does not allege how that change was related to a

protected status. *Id.* at 405–06. And as found by the ALJ, a supervisor editing a subordinate's work is within the scope of the supervisor's duties. ECF No. 27-6 at 18, 26.

Ms. Brown alleges that Mr. Min removed many of her duties and that she was required to train new Asian-American employees who would take over her duties. But as found by the ALJ, Ms. Brown has not presented evidence that the alleged changes in duty status were related to her protected statuses and instead she relies on her own subjective beliefs that Asian-American employees were treated better. ECF No. 27-3 at 46; ECF No. 27-6 at 26. Also, Ms. Chung-Davies provided a legitimate reason for the shuffling of duties: that they try to cross-train the employees on a variety of duties. ECF No. 27-4 at 154–55; ECF No. 27-6 at 15, 26.

Ms. Brown alleges that Mr. Min told her to complete complex billing tasks as well as other tasks that other co-workers were not asked to do, but she does not provide any evidence that this was the case or that the assignments were related to her protected statuses. *See* ECF No. 27-6 at 20, 26.

Finally, Ms. Brown alleges that Ms. Chung-Davies called her a liar and said that she was wrong in a July 19, 2021 email after Ms. Brown flagged alleged issues with reporting BLAs. ECF No. 27-5 at 132; ECF No. 27-6 at 20, 25. But the email at issue shows that Ms. Chung-Davies responded professionally. ECF No. 27-5 at 422; ECF No. 27-6 at 20, 25.

Viewing the evidence that was before the ALJ in the light most favorable to Ms. Brown, she has failed to come forward with evidence from which a reasonable jury could conclude that Defendants' reasons for the actions described above were motivated by her race or color. Instead, Ms. Brown asserts a litany of subjectively perceived personal slights that appear unconnected to her protected statuses. Ms. Brown's case is built on

17

conclusory statements and subjective belief, which cannot meet her burden. Therefore, she has failed to establish a disparate treatment discrimination claim with respect to any of the circumstances within the scope of the ALJ's decision, specifically those occurring on or before March 17, 2022, the date she last amended her EEO charge. Defendants are entitled to summary judgment on those claims.

### 2. Retaliation

To establish a prima facie Title VII retaliation claim, Ms. Brown must prove that (1) she engaged in a protected activity, (2) there was a materially adverse action, and (3) there was a causal link between the two events. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015). And, as stated, to establish causation she must show that the retaliation was the but-for cause of the alleged adverse actions, which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 570 U.S. at 360.

"Title VII . . . does not set forth 'a general civility code for the American workplace'" and "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). Instead, an action is materially adverse in this context if it "might well deter a reasonable employee from complaining about discrimination." *Id.* at 69.

As with her discrimination claims, even viewing the facts in the light most favorable to her, Ms. Brown does not show that the allegedly retaliatory acts on or before March 17, 2022 occurred because of her protected activities—that is, activities protesting alleged discrimination *based on her race or color* rather than for other

complaints lodged for other reasons. *See* 42 U.S.C. § 2000e-3(a) (providing that it is unlawful to discriminate against an individual "because he has opposed any practice made an unlawful employment practice *by this subchapter*") (emphasis added). Moreover, the evidence discussed above, viewed in the light most favorable to her, shows that Ms. Brown has also not proven that Defendants took materially adverse actions against her sufficient to support a retaliation claim. *See Parsons v. Wynne*, 221 F. App'x 197, 198–99 (4th Cir. 2007) (holding that neither a negative performance review nor being removed from an alternate work schedule were materially adverse for a retaliation claim). Ms. Brown has also not shown causation, in that she has not shown that the alleged retaliatory actions would not have happened *but for* her protected activities. And regardless, as also discussed above in connection with the disparate treatment claims, Ms. Brown has not shown that the reasons for any of these actions were pretextual. Thus, Ms. Brown's retaliation claims based on the allegations in her EEO charges (last amended March 17, 2022) that were before the ALJ fail as a matter of law.

### 3.    Hostile Work Environment

To establish a hostile work environment claim under Title VII, the plaintiff "must offer facts that plausibly support inferences that 'she was subjected to (1) unwelcome conduct, (2) based on her race [or national origin] or sex, that was (3) severe or pervasive enough to make her work environment hostile or abusive and (4) imputable to [ ] her employer.'" *Laurent-Workman v. Wormuth*, 54 F.4th 201, 210 (4th Cir. 2022) (quoting *Bazemore v. Best Buy*, 957 F.3d 195, 200 (4th Cir. 2020)).

For the reasons discussed in connection with Ms. Brown's disparate treatment claims, she has not come forward with evidence based upon which a reasonable juror

could conclude that she was subjected to a hostile work environment *based on her race or color*. Ms. Brown has also not shown conduct that "clear[s] [the] high bar . . . to satisfy the severe or pervasive test." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). The severe or pervasive requirement has both subjective and objective components. "First, the plaintiff must show that [s]he 'subjectively perceive[d] the environment to be abusive.'" *Id.* (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21–22 (1993)). "Next, the plaintiff must demonstrate that the conduct was such that 'a reasonable person in the plaintiff's position' would have found the environment objectively hostile or abusive." *Id.* (quoting *Oncale*, 523 U.S. at 81–82). For the objective prong of this inquiry, courts must "look to the totality of the circumstances and consider: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Webster v. Chesterfield Cnty. Sch. Bd.*, 38 F.4th 404, 414 (2022) (quoting *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 335 (4th Cir. 2010)).

Even viewing the evidence in the light most favorable to Ms. Brown, she has not alleged a severe and pervasive hostile workplace, and instead asserts, at most, "rude treatment by [coworkers], callous behavior by [one's] superiors, [and] a routine difference of opinion and personality conflict with [one's] supervisor," which "are not actionable." *Sunbelt Rentals*, 521 F.3d at 315–16 (internal quotation marks and citations omitted). Accordingly, as to claims based on events on or before March 17, 2022, Defendants are entitled to summary judgment on Plaintiff's hostile work environment claim.

20

### B.      Rehabilitation Act

Ms. Brown frames her failure-to-accommodate claim as an ADA claim but, because Ms. Brown is a federal employee, the Rehabilitation Act is the exclusive vehicle for that claim. *Brown*, 6 F. App'x at 156. Discrimination under the Rehabilitation Act includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.'" *Hooven-Lewis v. Caldera*, 249 F.3d 259, 268 (4th Cir. 2001) (quoting 42 U.S.C. § 12112(b)(5)(A)). "The standards used to determine whether an employer has discriminated under the Rehabilitation Act are the standards applied under the Americans with Disabilities Act." *Id.*

To establish a prima facie case for a failure-to-accommodate claim under the Rehabilitation Act, a plaintiff must show that (1) "she qualifies as an 'individual with a disability' as defined in 29 U.S.C.A. § 705(20)," (2) her employer "had notice of her disability," (3) she "could perform the essential functions of her job with a reasonable accommodation," and (4) her employer "refused to make any reasonable accommodation." *Reyazuddin v. Montgomery Cnty., Maryland*, 789 F.3d 407, 414 (4th Cir. 2015). At the summary judgment stage, if the plaintiff establishes a prima facie case, the employer "avoids liability if it can show as a matter of law that the proposed accommodation will cause undue hardship in the particular circumstances." *Id.* (internal quotation marks omitted). Moreover, "[a]n employer may reasonably accommodate an employee without providing the exact accommodation that the

employee requested. Rather, the employer may provide an alternative reasonable accommodation." *Id.* at 415.

As stated, Ms. Brown does not consider herself to be disabled. ECF No. 27-3 at 25. But regarding accommodation requests, in her amended complaint Ms. Brown alleges that she "requested a reduction in stress levels at work" and "asked the Agency to stop using the fake [February 2017 letter of counseling] to stress" her. ECF No. 24-1 at 42–43. The ALJ's opinion notes that on November 11, 2021, Ms. Brown requested the following accommodations:

> 1) To be on leave until the agency can protect me from current harassment from supervisor; 2) Report to another manager; 3) Remain on sick leave until a decision has been reached by the agency to stop harassment by supervisor; 4) A reduction in stress level at work; 5) To work from home full time, to avoid working in a hostile work environment; 6) Unpaid leave if required for stress during complaints of harassment or bullying reported to the agency; 7) As an adaptive measure, record meetings when requested; 8) As a last resort if#1-4 is unsuccessful, reassignment to a vacant position under new supervision.

ECF No. 27-6 at 22.

On February 22, 2022, Mr. Min responded by denying requests 1 and 3, concluding that: "[c]laims of harassment were not within the reasonable accommodation purview and are being addressed in a different forum." *Id.* Mr. Min denied requests 2 and 8, reasoning that "[t]he available medical information does not support reassignment" because there did not seem to be a medical need for a change in supervisor. *Id.* Regarding request 4, Mr. Min authorized Ms. Brown to take two additional fifteen-minute breaks during her workday as needed. *Id.* Regarding request 5,

Mr. Min determined that "[o]nce we resume normal operations" Ms. Brown would be able to "continue working from home for a period of three (3) months." *Id.* Regarding request 6, Mr. Min allowed Ms. Brown to use up to sixty days of unpaid leave. *Id.* Regarding request 7, Min allowed Ms. Brown to have a union representative present at each of her one-on-one meetings with her supervisor. *Id.*

Ms. Brown appealed Mr. Min's February 22, 2022 determination up the chain of command until it reached Mr. Stone. On March 16, 2022, Mr. Stone issued a determination denying four of Ms. Brown's accommodation requests that were "based on harassment and hostile work environment rather than . . . medical limitations," but noted that her allegations were "in the process of being investigated under the Agency's Anti-Harassment Program." *Id.* at 22–23. Mr. Stone also denied Ms. Brown's request for reassignment because, medically, she was "able to perform the essential functions of [her] position." *Id.* Mr. Stone affirmed the offer of two additional fifteen-minute breaks during her workday and the presence of a union representative for her meetings with her supervisor. *Id.*; *see also* ECF No. 27-5 at 437 (Mr. Stone explaining that he "denied aspects of [Ms. Brown's] request and offered alternatives according to Agency policy," that he denied her requests "because they d[id] not fall under what the Agency can offer as an accommodation" because "[m]any of her requests were not based on medical evidence, or they were alleging harassment, which falls under the EEO process, and not an accommodation process," and that Ms. Brown "was offered alternatives when possible, and given instructions and guidance on how to properly address issues regarding harassment").

As found by the ALJ, even viewing the facts in the light most favorable to Ms. Brown, the "[e]vidence demonstrates that the supervisors went through each request

23

and engaged in the interactive process in good faith" and Stone "did approve some of the requests and provided some alternatives to the ones he rejected." ECF No. 27-6 at 27. While Ms. Brown alleges that the agency failed to accommodate her PTSD, the evidence shows that the agency considered her requests, granted some, and appropriately explained its decisions regarding the denials. Therefore, even assuming that Ms. Brown is an "individual with a disability" under 29 U.S.C. § 705(20), she has failed to come forward with evidence from which a reasonable jury could conclude that she has shown a prima facie Rehabilitation Act claim because, at a minimum, she has not shown that her employer refused to make reasonable accommodations.

### C.    Privacy Act

Ms. Brown appears to base her Privacy Act claims on allegations that in 2015 Mr. Min and her co-workers discussed Ms. Brown's disabled child "in an offensive" and "harmful manner" and that Mr. Min allegedly shared Ms. Brown's medical information with Mr. Park in a June 21, 2019 email to Ms. Brown on which Mr. Park was copied. ECF No. 24 at 11–12; ECF No. 24-1 at 1; ECF No. 27-4 at 89–90; ECF No. 27-6 at 27. But the Privacy Act does not reach that type of conduct. The Privacy Act concerns the privacy and accuracy of government agency records and authorizes the filing of a civil action in four instances, none of which apply here. 5 U.S.C. § 552a(g)(1); *see Haase v. Sessions*, 893 F.2d 370, 373 (D.C. Cir. 1990) (noting that the Privacy Act's "four causes of action are set forth in section 552a(g)(1)"). Moreover, Ms. Brown's claims from 2015 and 2019 are time-barred under the Privacy Act's two-year statute of limitations. 5 U.S.C § 552a(g)(5).

Finally, as discussed by the ALJ, the evidence shows that there was no improper disclosure of her medical information by Mr. Min to Mr. Parks. ECF No. 27-6 at 27. Mr.

24

Min did not disclose any sensitive medical information—he just referred generally to a medical condition—and, regardless, Mr. Parks is Ms. Brown's second-line supervisor and would be involved in any accommodation process.[3]

### D.   Allegations After March 17, 2022[4]

"It is well settled that before filing suit under Title VII . . . a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC." *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022). "The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint." *Id.* (quoting *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 416 (4th Cir. 2014)). "Only those discrimination claims stated in the initial charge, those reasonably related to the

---

[3] Ms. Brown also refers to various criminal and civil statutes in the jurisdictional statement in her amended complaint, ECF No. 24 at 5, but to the extent she seeks relief based thereon, they do not provide private causes of action. *See Fed. Sav. & Loan Ins. Corp. v. Reeves*, 816 F.2d 130, 137–38 (4th Cir. 1987) (agreeing that there is "no basis for implying a civil cause of action from" 18 U.S.C. § 1001); *Sheridan v. Haaland*, Case No. 23-cv-01116-JRR, 2024 WL 3454995, at *8 (D. Md. July 17, 2024) ("The statutory text of 18 U.S.C. § 471 does not provide for a private right of action."); *Gambino v. Hershberger*, Case No. 17-1701-TDC, 2311, 2019 WL 1300856, at *11 (D. Md. March 20, 2019) ("[T]he district courts to address this issue have declined to infer a private right of action from 18 U.S.C. § 1519."); *Taylor v. Mayorkas*, Case No. 23-cv-21881, 2024 WL 1929497, at *13 (S.D. Fla. May 2, 2024) (holding that 5 U.S.C. § 3110 "doesn't create a private cause of action").

[4] By holding that Ms. Brown has not come forward with any evidence from which a reasonable jury could find for her on claims based on events on or before March 17, 2022, the Court is not opining one way or the other on whether her claims that were not included in the EEOC charges before the ALJ (which she last amended on March 17, 2022) could survive summary judgment. As explained above, the reason that distinction matters is that the Court herein is granting Defendants summary judgment as to any events before that date (under Federal Rule of Civil Procedure 56) but is *dismissing* her claims based on any events *after* that date based on a failure to *plead* any cognizable violations in her complaint (under Federal rule of Civil Procedure 12(b)(6)).

original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII" lawsuit. *Id.* (quoting S*tewart v. Iancu*, 912 F.3d 693, 705 (4th Cir. 2019). "If the discrimination claims 'exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.'" *Id.* (quoting *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005)).

As stated, Ms. Brown's amended complaint contains additional allegations that postdate March 17, 2022 and that were not before the ALJ. It is not clear whether these new allegations are included in any subsequent EEO complaints. Ms. Brown states in her amended complaint that she has "approx. 5 right to sue letters from 2017–2025," ECF No. 24 at 18, but the Court did not locate any additional relevant EEO complaints or right to sue letters in the record. Thus, it is not clear whether these additional claims have been exhausted or whether they reasonably relate to the two EEO complaints that were before the ALJ.[5] Defendants do not address these new allegations in their motion.

---

[5] The Court notes that in an exhibit to her motion to file an amended complaint (which the Court granted), Ms. Brown attaches an email correspondence from May 2025 in which Ms. Brown tells an Equal Employment Specialist that she would like to file two new EEO complaints. ECF No. 22-2 at 3. The specialist responded that due to internal issues, new EEO cases would "be held in temporary abeyance until [they] can be processed, with no negative consequences to you or the case." *Id.* at 4. The specialist asked if Ms. Brown had a new EEO complaint at the EEOC hearing stage. *Id.* at 2. Ms. Brown responded that she had the current lawsuit pending (rather than an EEO complaint at the agency hearing stage) and told the specialist that she was trying to add her new claims to this lawsuit via an amended complaint. *Id.* at 1. The specialist asked Ms. Brown to let her know if she was able to add her new claims to the current complaint. *Id.* This email exchange does not affect the exhaustion requirements; Ms. Brown does not contend, nor could she, that her email stating an intent to file a complaint, or her statement of her intentions in how to handle the litigation before this Court, constitutes an administrative charge of discrimination.

In general, Plaintiff's amended complaint does not meet the requirements of Federal Rule of Civil Procedure 8 to provide a "short and plain statement" of her claims and therefore must be dismissed. Fed. R. Civ. P. 8(a)(2). And in particular, the additional allegations dated after March 17, 2022—*i.e.* those that were not adjudicated by the ALJ and thus as to which the Court is not at present granting summary judgment to Defendants—are insufficient to state viable claims for at least several of Ms. Brown's current claims because the new allegations are very similar to the insufficient allegations describe above (with the exception of the new claim that Ms. Brown was suspended for three days in January 2024). For example, she does not allege that she was discriminated against on the basis of a disability or that she was denied additional reasonable accommodations on any date after March 17, 2022. The new allegations also do not show a hostile work environment after March 17, 2022 because these alleged circumstances, even if true, and like those before the ALJ, are insufficiently severe and pervasive. *See, e.g.* ECF No. 24-1 at 26 (alleging that Ms. Berry called Ms. Brown a liar); ECF No. 24-1 at 42 (alleging that Mr. Min implied Ms. Brown was crazy); ECF No. 24 at 15, ECF No. 24-1 at 32 (alleging that she was required to perform additional duties).

Thus, the claims in Plaintiff's amended complaint based on events occurring after March 17, 2022 will be dismissed. That is because, even accepting Plaintiff's factual allegations as true, and even if she exhausted claims based on events after that date, the complaint does not state any claims (for discrimination, retaliation, failure-to-accommodate, hostile work environment or otherwise) with respect to any post-March 17, 2022 events on which relief can be granted.

The Court's dismissal of that aspect of her complaint (*i.e.*, as to occurring after March 17, 2022), will be without prejudice. This means Ms. Brown could, if she so

27

wished, file a motion requesting permission to file an additional amended complaint. Such a proposed amended complaint would have to be limited to events after March 17, 2022. And such complaint would only be proper if Plaintiff in fact exhausted her claims by filing charges of discrimination for post-March 17, 2022 events. At this time, the Court does not reach the question of whether Plaintiff has exhausted such claims because the current record before this Court is unclear as to whether Plaintiff filed any charges of discrimination based on events after that date. As will be reflected in the order that accompanies this opinion, the dismissal will automatically convert to a dismissal with prejudice if Plaintiff does not file a motion for leave to amend within 21 days of the order.

## IV.    CONCLUSION

For these reasons, Defendant's motion to dismiss or in the alternative for summary judgment will be granted. More specifically, the Court will grant summary judgment in Defendants' favor on Ms. Brown's claims that were included in the administrative record (the claims arising on or before March 17, 2022) and will dismiss without prejudice her claims arising after March 17, 2022.

A separate order follows.

Date:  March 25, 2026                     _____/s/_____
                                          Adam B. Abelson
                                          United States District Judge

28